PNC BANK, OHIO, N.A., Trustee, Appellee,

v.

STANTON et al., Appellants;

WILLIAMSON, Appellee.

[Cite as *PNC Bank, Ohio, N.A.* v. *Stanton* (1995), 104 Ohio App.3d 558.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940227.

Decided June 14, 1995.

*James J. Chalfie* and *Stephen R. Felson,* for appellants.

*Ralph F. Mitchell* and *D. Michael Poast,* for appellee Ruth Hatcher Williamson.

---

MARIANNA BROWN BETTMAN, Judge.

This appeal involves the issue of who is legally entitled to receive the principal of an inter vivos trust created by William H. Mitchell ("grantor") on March 28, 1955. The trust provided for the payment of the trust income to the grantor for his lifetime, then to his wife, Margaret T. Mitchell, if she survived him, for her lifetime. Upon the death of the surviving life income beneficiary, the trust principal was to go to the grantor's son William M. Mitchell ("William") if he was alive. If, however, William predeceased the surviving life income beneficiary, upon the death of the surviving life income beneficiary, the trust provided for the payment of the principal to William's "heirs at law."

On September 16, 1958, three years after the trust's creation, the grantor died, survived by Margaret Mitchell and William.[1] On October 2, 1958, sixteen days after the grantor's death, William went to the Hamilton County Probate Court and, pursuant to R.C. 2105.15, designated defendant-appellee Ruth Hatcher Williamson as his heir.

William died on August 17, 1974. At the time of his death, he was unmarried and childless. William predeceased Margaret Mitchell, and, therefore, by the terms of the trust, the trust principal was to pass, upon Margaret Mitchell's death, to William's heirs at law. Thus, when Margaret Mitchell died on September 30, 1992, PNC Bank, trustee of the trust,[2] was confronted with the question whether the trust's provision for the payment of the principal to William's heirs at law meant payment to Williamson, William's designated heir, or payment to defendants-appellants Thomas M. Stanton, Jeanne F. Stanton, Louise M. Guckenberger and Thomas G. Morris ("the cousins"), William's closest blood relatives.

The trustee filed an action in the probate court seeking construction of the trust. The matter was submitted to the probate court on stipulated facts. The court heard the matter as if on cross-motions for summary judgment. The court construed the trust term "heirs at law" to include a designated heir and,

---

1. Margaret Mitchell is the grantor's second wife. William is the grantor's son from a previous marriage. The grantor and Margaret Mitchell had no children.

2. The trustee, PNC Bank, is designated as an appellee, but it has not participated in the appeal.

accordingly, directed PNC to pay the principal to Williamson. The cousins appealed.

On appeal, the cousins advance a single assignment of error in which they contend that summary judgment was improperly entered in favor of Williamson. They argue that Williamson, as William's designated heir, could take directly from William, but could not reach the principal of the grantor's trust through William. For the reasons which follow, we agree.

■ R.C. 2105.15, which governs the designation of an heir at law,[3] provides that an heir so designated "will stand in the same relation, for all purposes, to such declarant as he could if a child born in lawful wedlock. The rules of inheritance will be the same between him and the relations by blood of the declarant, as if so born." Notwithstanding this broad statutory definition, the Ohio Supreme Court, in *Blackwell v. Bowman* (1948), 150 Ohio St. 34, 37 O.O. 323, 80 N.E.2d 493, placed a significant limitation on the rights of a designated heir, holding that, under the statutes of descent and distribution, a person who has been designated as an heir at law can inherit from, but not through, his designator. *Id.*, paragraph two of the syllabus.

The cousins assert that the rule in *Blackwell* controls and limits Williamson to taking from, but not through, William. They argue that because William predeceased Margaret Mitchell, the trust assets never vested in William, and thus never became his to pass directly on to Williamson. Thus, according to the cousins, the rule in *Blackwell* precludes Williamson from taking the principal of the grantor's trust through William.

Williamson argues that a term in a trust, not the statute of descent and distribution, is at issue here. She relies on *Witten v. Landrum* (1974), 41 Ohio App.2d 65, 70 O.O.2d 61, 322 N.E.2d 146, in which the Court of Appeals for Van Wert County distinguished *Blackwell* and construed the term "legal heirs" in a will to include a designated heir. Williamson would have us adopt the rationale of the court in *Witten* and hold that she was entitled to the trust principal because her status as William's heir at law vested at William's death, and, at that time, she became, in a legal sense, William's natural child and his legal heir.

■ The flaw in Williamson's argument is made apparent by the following statement in her brief:

---

**3.** The designated-heir statute was first enacted in 1854 and has remained in effect without substantial revision since its enactment. Its original purpose was to correct certain inequities in the inheritance rights of adopted and illegitimate children. These inequities have, for the most part, been legislatively remedied. We believe the legislature should consider whether the designated-heir statute continues to serve any useful purpose.

"The term 'heirs at law' in its usual legal and strict technical import today signifies the * * * persons appointed by law under the statute of descent and distribution in force at the time of the decedent's death * * * who would succeed to the estate in case of [the decedent's] intestacy * * *. 'Heirs at law' is a legal term and applies to those persons who have certain legal rights under the statute of descent and distribution."

We accept Williamson's position that a will or a trust provides a different matrix from an estate passing by intestate succession. However, even under the analysis offered by Williamson, the trust term "heir at law" must be defined with reference to the statute of descent and distribution. Thus, when dealing with a designated heir, whether in a will, a trust or an intestacy situation, we run squarely into the limitation set forth in *Blackwell, supra,* namely, that a designated heir can take only from, not through, his or her designator.

We believe that this result is compelled for two other reasons. Williamson asserts that a testator or grantor is presumed to know the law in effect at the time he creates a legal document. She also cites the unassailable maxim that the intent of the testator or grantor should be ascertained and given effect whenever possible.

Looking first at the grantor's intent, it could hardly be said that the grantor of this trust knowingly intended to include Williamson in his estate plan. The record before us does not support a determination that the grantor knew, either at the time he created the trust or at any time before his death, that William had designated an heir. To the contrary, it is undisputed that William did not designate his heir until after his father died.

Similarly, if an individual who creates a legal document is presumed to know the law in effect at the time of its creation, the grantor in this case was entitled to rely upon the significant limitation placed on the rights of inheritance of a designated heir by the Supreme Court in *Blackwell, supra.* Under the law as set forth in *Blackwell,* Williamson could inherit only William's property from William.

We reject Williamson's arguments for one last reason. If we permitted Williamson to take through William and inherit the principal of the trust, we would be rewriting the trust to give William a power of appointment over the trust assets. We decline to so modify the trust or to give it such an expansive interpretation.

Having thus concluded that the probate court erred as a matter of law in determining that Williamson, as William's designated heir, was the sole beneficiary of the trust assets, we sustain the cousins' sole assignment of error and reverse the entry of summary judgment for Williamson. Upon the stipulated record in the case and applying the law as set forth herein, we further hold that

summary judgment should have been granted to the cousins. Accordingly, we remand this matter to the probate court with instructions to enter summary judgment in favor of the cousins and to enter an order directing the trustee, PNC Bank, to distribute the trust assets among the cousins.

*Judgment reversed
and cause remanded.*

DOAN, P.J., and PAINTER, J., concur.